ENTERED ON DOCKET

9|20|99 PURSUANT

TO FRCP RULES 58 & 79a

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

1

2    MIGUEL A. ANDINO-PASTRANA,

3        Plaintiff,                          Civil No. 98-1903 (JAF)

4        v.

5
     MUNICIPALITY OF SAN JUAN;
6    HON. SILA MARIA CALDERON, as
     Mayor of San Juan, and EDUARDO
7    RIVERO ALBINO, as an officer
8    of said Municipality,

9        Defendants.

10   ------------------------------------

11

12                        **OPINION AND ORDER**

13       Plaintiff, Miguel A. Andino-Pastrana, brings this action

14   against Defendants, the Municipality of San Juan ("the

15   Municipality"); Sila María Calderón, Mayor of the Municipality of San

16   Juan, in her official capacity; and Eduardo Rivero-Albino ("Rivero"),

17   Director of the Department of Economic Development and Tourism of the

18   Municipality of San Juan, in his official capacity, alleging

19   political and racial discrimination pursuant to 42 U.S.C. § 1983.

20                                 I.

21

22                        **Factual Background**

23       Since 1968, Plaintiff has been a civil servant providing

24   educational training and employment opportunities to disadvantaged

25   persons.  On February 16, 1993, Plaintiff became Associate Director

26

RECEIVED & FILED
99 SEP 20 PM 2:28
CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN, P.R.

AO 72
(Rev 8/82)

Civil No. 98-1903 (JAF)                                            2-

of the Training and Employment Program ("TEP") of the Municipality.

The TEP is funded largely through federal government grants provided

to the Municipality under the rubric of the Job Training Partnership

Act ("JTPA"), P.L. 97-300, 29 U.S.C. §§ 1501-1792b.  The position of

Associate Director is a career position.

Plaintiff alleges that he performed the duties of his position

in an efficient, professional, and successful manner and that his

evaluations were unceasingly excellent.  Plaintiff maintains that the

federal auditors assigned to track JTPA funds similarly rated

Plaintiff's program.

Following the November 1996 election, a new municipal

administration assumed power.  Defendant Calderón, a member of the

Popular Democratic Party, was elected Mayor of San Juan.  Plaintiff

had been an active supporter of the PDP and the former Mayor, Héctor

Luis Acevedo.  Defendant Calderón took office in January 1997, and

she named Defendant Rivero to the post of Director of the Department

of Economic Development and Tourism.  Therefore, Defendant Rivero

became Plaintiff's supervisor.

Plaintiff alleges that Defendant Rivero, from the day in which

he assumed his post in February 1997, blatantly discriminated against

him due to political and racial reasons.  Plaintiff complains that

Defendant clearly ignored Plaintiff's position within the

organizational hierarchy by dealing directly with Defendant's

Civil No. 98-1903 (JAF)                                                    3-

subordinates.   Plaintiff contends that Defendant coordinated with

Vilma Rodríguez, the finance director and a subordinate of Plaintiff,

to begin a financial reserve to be used for the purchase of specialty

trucks equipped with amplified loud speakers which are normally used

in political campaigns ("the trucks").   To supply funds for the

reserve, Plaintiff alleges that Defendant Rivero told Ms. Rodríguez

to dismiss program employees.   Ms. Rodríguez reported this to

Plaintiff who then confronted Defendant Rivero and objected to such

action.   Plaintiff contends that Defendant Rivero countered that if

the employees were not dismissed Plaintiff would be responsible for

finding $250,000 for the reserve.   Plaintiff maintains that Defendant

Rivero never informed Plaintiff that the reserve would be used to

purchase the trucks.

Subsequently, in April 1997, Defendant Rivero had to defend his

department's budget before the Municipal Assembly.   Plaintiff alleges

that he fully intended to attend the meeting but that several moments

prior to his departure for the meeting one of Defendant Rivero's

aides, Ms. Maru Roselli, telephoned and informed him that he could

attend the presentation, but that neither he nor Ms. Vilma Rodríguez

should sit next to Defendant Rivero.   Plaintiff and Ms. Rodríguez are

both Black/African-American and Defendant Rivero is white.

Plaintiff also alleges a separate incident in which Defendant

Rivero sent another one of his aides, Mr. César Muñoz, to meet with

AO 72
(Rev 8/82)

Civil No. 98-1903 (JAF)                                              4-

Plaintiff's subordinates in Plaintiff's absence.    Upon becoming

informed about the meeting, Plaintiff confronted Mr. Muñoz and

announced that he was the proper person to speak to concerning the

program.    At this point, Plaintiff alleges that Mr. Muñoz informed

Plaintiff that the "bulldozer was coming," and the Defendant Rivero,

with the blessing of Defendant Calderón, planned to be the PDP

mayoral candidate in the 2000 elections.    Plaintiff further alleges

that Mr. Muñoz informed him that Defendant Rivero was removing former

Mayor Acevedo's structures and people, which included Plaintiff

because he was an "Acevedo man."    According to Plaintiff, Mr. Muñoz

further informed him that the trucks Defendant Rivero wanted to

finance with the program's funds were going to be used in promoting

Defendant Rivero's image as a successful executive within the

municipality.

In June 1997, Defendant Rivero met with Plaintiff and informed

him that he was removing him from his post and transferring him to a

different position.    Plaintiff inquired about the reasons for the

transfer, and Defendant purportedly stated that he and Defendant

Calderón needed to be surrounded by "refreshing people who enjoyed

their confidence."    Defendant Rivero informed Plaintiff that he had

two options: A transfer to either the Housing Division or the Capital

Improvements Division.    Plaintiff contends that neither position was

appropriate for a career employee with his seniority.    Thus,

Civil No. 98-1903 (JAF)                                                5-

1   Plaintiff Andino refused the transfer, informing Defendant that he

2   was a career employee with a vested interest in his position as

3   Director of Training and Employment and that he was left with no

4   option except to go before the Merit System Protection Board

5   ("JASAP") and a court of law.  Plaintiff contends that Defendant

6   Rivero responded that he and Defendant Calderón "had removed everyone

7   they wanted, and that they did not care about the courts, or JASAP."

8       On July 10, 1997, Plaintiff received a letter from Defendant

9   Calderón transferring him to the Capital Improvements Division

10  effective four days later, on July 14, 1997.  Plaintiff appealed this

11  decision to the JASAP on August 8, 1997. <u>Miguel A. Andino Pastrana v.</u>

12  <u>Municipio de San Juan</u>, case no. CT-X-97-08-248.  This case is still

13  pending.

14      Plaintiff maintains that since he filed for review before the

15  JASAP, Defendant Rivero has retaliated against Plaintiff by assigning

16  him to clerical tasks that are not in accord with his career

17  position.  Some of the specific tasks that Plaintiff alleges include:

18  Collecting rent from tenants of the Municipality; monthly checking of

19  lease contracts that have expired; and counting the available spaces

20  in tombs in cemeteries owned by the Municipality.  Plaintiff

21  maintains that he currently shares a tiny office with a

22  Black/African-American co-worker and that they both use the same

23

24

25

26

Civil No. 98-1903 (JAF)                                                      6-

1    desk.  Plaintiff alleges that their office is known mockingly amongst

2    Defendant Rivero's aides as the "monkey cage."

3         José A. Franqui-González replaced Plaintiff as Director of the

4    TEP.  Mr. Franqui-González is a  white temporary employee of the

5    Municipality and is purportedly a good friend of Defendant Rivero.

6         Defendants move to dismiss the claims alleging that they are

7    time-barred by the statute of limitations.

8                                   II.

9
10                          **Statute of Limitations**

11        Puerto Rico's one-year statute of limitations governing tort

12   actions applies with equal force to section 1983 claims.  <u>See</u>

13   Articles 1802 and 1868 of the Civil Code, 31 L.P.R.A. §§ 5141(d) and

14   5298.  <u>Guzmán-Rivera v. Rivera-Cruz</u>, 29 F.3d 3, 4-5 (1st Cir. 1994);

15   <u>Lafont-Rivera v. Soler-Zapata</u>, 984 F.2d 1, 2 (1st Cir. 1993).  The

16   accrual period in a section 1983 action starts when the plaintiff

17   knows, or has reason to know, of the injury on which the action is

18   based. <u>Id.</u> at 3.  Nonetheless, there are three methods of tolling the

19
20   statute of limitations: Filing before the courts; extrajudicial claim

21   of the creditor; and by act of acknowledgment of the debt by the

22   debtor. Article 1813 of the Civil Code, 31 L.P.R.A. § 5303.  These

23   tolling methods are applicable to the one-year statute of limitations

24   and consequently to section 1983 cases.  <u>Fernández v. Chardón</u>, 681

25   F.2d 42, 49 (1st Cir. 1982); <u>Hernández del Valle v. Santa Aponte</u>, 575

26

AO 72
(Rev 8/82)

Civil No. 98-1903 (JAF)                                         7-

1   F.2d 321, 323 (1ˢᵗ Cir. 1978) (in cases seeking monetary

2   compensation). "This tolling is effective only with regard to

3   identical causes of action; the filing of one action does not toll

4   the statute of limitations for all claims arising out of the same

5   facts." Id.; Torres v. Superintendent of the Police of Puerto Rico,

6   893 F.2d 404, 407 (1ˢᵗ Cir. 1990) (statute of limitations not tolled

7   where remedy sought before administrative board, the Investigation,

8   Processing and Appeals Commission of the Police Department, was not

9   identical to the remedy sought under section 1983); Ramírez de

10  Arellano v. Alvarez de Choudens, 575 F.2d 315 (1ˢᵗ Cir. 1978)

11

12  (mandamus action before Puerto Rico Commonwealth Board did not toll

13  statute of limitations for section 1983 claim); Graffals v. García,

14  550 F.2d 687, 688 (1ˢᵗ Cir. 1977) (one-year statutory period not

15  tolled by an administrative appeal of the dismissal); cf Torres v.

16  Padilla, 622 F.Supp. 1276, 1279 (D.P.R. 1985) (filing of Puerto Rico

17  superior court action tolled statute of limitations for federal

18  section 1983 claim, even though superior court action was voluntarily

19  dismissed by employee).

20

21      In this case, Defendants allege that Plaintiff was notified of

22  the change in his position in June 1997 and that the administrative

23  review filed before JASAP failed to satisfy the requirements to toll

24  the one-year statute of limitations. Therefore, since Plaintiff did

25  not file the instant suit until August 7, 1998, Defendants maintain

26

AO 72
(Rev 8/82)

Civil No. 98-1903 (JAF)                                              8-

that the cause of action is time-barred. Plaintiff counters that he

was not notified formally of a change in his position until July 10,

1997, when he received the letter concerning his transfer from

Defendant Calderón. Subsequently, he filed for review before JASAP

on August 8, 1997, which he claims continues to toll the statute of

limitations, since the decision is pending.

The relevant inquiry is whether Plaintiff's submission to JASAP

is sufficient to toll the statute of limitations.  We begin by

examining the remedies requested in each action. Del Valle, 575 F.2d

at 323.   Before JASAP, Plaintiff requested nullification of his

transfer, reinstatement to his career position, injunctive relief to

end the harassment, and damages of $1,000,000.  Docket Document

No. 9, Exh. 2, p. 3.  The present complaint seeks the same monetary

damages and "any and all relief the Court deems just, reasonable,

appropriate and necessary to correct the illegal and discriminatory

conduct of defendants toward [Plaintiff]." Docket Document No. 2,

p. 10.  Clearly, different remedies are being sought. Cf Torres, 893

F.2d at 404 (holding that appeal to police administrative board did

not request same relief as federal section 1983 action).  The main

claim in the instant case is for monetary damages, while in the

administrative review Plaintiff was seeking revocation of his

transfer, reinstatement and an injunction.  Nonetheless, Plaintiff

urges us to overlook any differences and hold that since both actions

Civil No. 98-1903 (JAF)                                                   9-

1   seek monetary damages, they are the same action.  We decline to do

2   so.  We find First Circuit case law to be clear on this point and are

3   constrained from reaching a different result.

4        Furthermore, the Supreme Court of Puerto Rico has definitively

5   held that actions before JASAP do not toll the statute of limitations

6   for state claims when they do not pursue the same objectives. Cintrón

7   v. Estado Libre Asociado de P.R., 127 D.P.R. 582 (1990).  An action

8   before JASAP is regulatory in nature.  Therefore, JASAP has no

9   authority over violations of statutory or constitutional rights. Id.

10  Thus, the Cintrón court concluded that the appropriate avenue for

11  vindication of a state tort action was directly through the

12  judiciary.  Otherwise, the action may become time-barred.  We have an

13  analogous situation before us.  JASAP has no authority to address

14  Plaintiff's alleged constitutional violation.  Therefore, it is

15  simply disingenuous to posture that filing a claim before JASAP would

16  toll the statute of limitations on a constitutional claim.  As such,

17  Plaintiff's filing for review before JASAP did not toll the statute

18  of limitations for his federal section 1983 claim.

19       Thus, we are left to determine whether Plaintiff filed his

20  complaint within the one-year statute of limitations.  Even assuming

21  that the proper date from which to determine accrual is July 10,

22  1997, Plaintiff's action is time-barred.  Plaintiff did not file the

AO 72
(Rev 8/82)

Civil No. 98-1903 (JAF)                                                      10-

1   instant suit until August 7, 1998, well beyond the statutory time

2   limit.

3                                    III.

4                                Conclusion

5       In light of the foregoing, we **GRANT** Defendants' motion to

6   dismiss.  Judgment shall be entered accordingly.

7
        **IT IS SO ORDERED.**
8
        San Juan, Puerto Rico, this      17th day of September, 1999.
9

10

11                                      JOSE ANTONIO FUSTE
                                        U. S. District Judge
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

AO 72
(Rev 8/82)